BINDE, et al, Respondents, v. BINDE, Appellant

(293 N. W. 362.)

(File No. 8356.  Opinion filed July 26, 1940.)

Rehearing Denied August 30, 1940.
(See 67 S. D. 436, 293 N. W. 632.)

**C. R. Jorgenson,** of Watertown, for Appellant.
**L. W. Bicknell,** of Webster, for Respondents.

RUDOLPH, J. The plaintiffs and defendant are brothers and sisters and inherited from their father certain lands in Roberts County which they held in common. In 1932, the plaintiffs mortgaged their interest in the premises which constituted an undivided 44/84ths, to secure the payment of $600. In 1935 the defendant, who owned an undivided 29/84ths of the property, purchased this mortgage, procured an assignment thereof, and filed this assignment in the office of the register of deeds of Roberts County. The plaintiffs resided upon the property which was a farm comprising one hundred sixty acres. The defendant did not live upon the farm. However, the defendant lived only a short distance from this farm and saw the plaintiffs frequently. Plaintiffs paid the interest upon the mortgage for the first year only and thereafter this interest was in default. The defendant never talked to the plaintiffs about the mortgage

or demanded payment except on one occasion in September 1936 when he had a conversation with his brother, Helge, one of the plaintiffs, which conversation was testified to by Helge, as follows: "He asked me what I was going to do with the mortgage; whether I was going to pay it or renew it. And I said he had to renew it at that time. That was all that was said about it. He didn't say that he would renew it, but he asked if we wanted it renewed and I said we did. That was all the conversation."

Immediately after this conversation, the defendant consulted a lawyer at Sisseton, South Dakota, and foreclosure proceedings were commenced. This farm was located only a few miles from the town of Summit, South Dakota. The foreclosure notice was published in the Rosholt Review, a newspaper published in the town of Rosholt, which is approximately fifty-five miles from Summit. This paper had a circulation of about eight hundred, but was not generally circulated in the vicinity of Summit or of this land. There were only one or two subscribers to this newspaper in the immediate vicinity of Summit. There was a paper published at Summit within four miles of the mortgaged premises, and which was circulated generally in the vicinity, and in which it was customary to publish foreclosure notices relating to land in that vicinity. Upon sufficient evidence the trial court found that the plaintiffs' interest in the land was reasonably worth a sum in excess of $2,000 and that the land was sold to defendant at the foreclosure sale for $744.42. Plaintiffs knew nothing of the foreclosure proceedings until the year of redemption had expired and sheriff's deed had issued. Immediately after acquiring the sheriff's deed, defendant had served upon the plaintiffs a notice to quit the premises from which they were eventually evicted. At no time did defendant inform plaintiffs that he was having the mortgage foreclosed, nor after the sale was mention made thereof, although defendant did on frequent occasions see the plaintiffs. Immediately after being evicted from the premises, plaintiffs brought these proceedings wherein they ask that the foreclosure proceedings be set aside.

It also appears from the evidence that after the mother

died in 1932 the plaintiffs and defendant appointed one Anton Prestwick as agent to lease the farm. Prestwick leased the farm to the plaintiff Helge A.. Binde for the year 1933, and for that year rent was collected and disbursed. For several years thereafter, however, because of the drought and other conditions, no rent was collected and the agent received only the government conservation checks. These checks, at least for the years 1934 and 1935, together with the conservation check for 1937 and the returns from the farm for the year 1937, were all turned over by Prestwick to the defendant, R. G. Binde, who was the oldest of the brothers and sisters. R. G. Binde during this time paid out considerable sums of money for insurance and other items, but it appears that shortly after receiving the sheriff's deed, R. G. Binde believed that he owed the plaintiffs some money on account of receipts from the farm, and sent each plaintiff, except Helge A. Binde who was owing rent, a check therefor. From this evidence and from the whole record it would appear that the agent and the brothers and sisters all looked to R. G. Binde, who was the oldest of the family, to more or less conduct and manage the farm after the death of the mother. The trial court found the facts substantially as set out above, and further found: "The conduct of the defendant fails to establish that degree of fair dealing and good faith which a mortgagee owes to those whom he knows to be interested in the mortgaged res and the equity of redemption, and was not designed to secure payment of the debt which he bought but to secure title to the land without the knowledge of the mortgagors or those interested in the equity of redemption, and that said foreclosure sale was conducted for the express purpose of securing title to the property and with the intention to secure the interests of plaintiffs at a grossly disproportionate price."

Judgment was entered for plaintiffs and defendant has appealed.

We are convinced that the facts bring this case within the rule announced in the case of Lipsey v. Crosser, 63 S. D. 185, 257 N. W. 125, 129. There is disclosed a family relationship with one member of the family dealing at arms

length with his younger sisters and brothers. Not only did he deal at arms length but he conducted his dealings in such a way that he kept the plaintiffs entirely in ignorance of the foreclosure proceedings. If he did not by his conversation with Helge deliberately lead plaintiffs to believe that the time of payment would be extended, he did at least give them cause to so believe, and, then, on the same day started the foreclosure proceedings. The notice of sale was published in a paper which had virtually no circulation in the vicinity in which respondents lived, and which was least likely of any paper published in the county to give respondents notice of the foreclosure proceedings; appellant acquired the property of his brothers and sisters for approximately one-third of its value. We are convinced that under the facts presented it was within the province of the trial court to find that appellant failed "to exhibit that degree of fair dealing and good faith which a mortgagee owes to those whom he knows to be interested in the mortgage res and the equity of redemption," within the meaning of the Lipsey v. Crosser case.

██ The mortgagee complied with the letter of the law and the sale was not therefore void, but under the rule announced in Lipsey v. Crosser, supra, the sale was voidable at the election of the mortgagor. The sale being voidable as distinguished from void, it is incumbent upon the plaintiffs to do equity before they are entitled to have such sale set aside. Lipsey v. Crosser, supra. By paragraph 10 of their complaint respondents stated that "they are willing to repay to defendant any balance which the Court may find due and owing to him and they offer to suffer judgment in such amount and tender the same in such amount as the Court shall find." The court found that there was due upon defendant's mortgage at the date of the judgment the sum of $764.17. However, the court then held that the defendant was entitled to a decree foreclosing his mortgage and directed the sale of the mortgaged premises to satisfy the amount due thereon. We do not believe such holding provides for doing equity in this type of proceeding. This amounts to simply ordering another sale of the mortgaged

premises without any assurance that at such sale the plaintiffs could or would protect themselves by bidding and paying the amount of the mortgage indebtedness. We are therefore of the opinion that, while the trial court was correct in concluding that the sale was subject to being set aside, it was error to simply decree and order another sale of the mortgaged premises to satisfy the mortgage debt.

The judgment appealed from is reversed with directions to the trial court to enter its order giving the plaintiffs thirty days within which to comply with the offer made in their complaint and pay to the defendant the amount of the mortgage indebtedness as found by the court together with interest to the time of payment. At the end of this thirty day period if the payment is made as ordered, the trial court is directed to enter its final judgment setting the foreclosure proceedings aside. If the payment is not made within the thirty day period, the judgment should in all things confirm the foreclosure proceedings as had. No costs to be taxed.

All the Judges concur.